TIMOTHY W. WELLINGTON & another *vs.* NORWICH AND
WORCESTER RAILROAD COMPANY & others.

The terminal freight stations of two railroads in an inland city were connected by a track
a mile long, part of which belonged to the first road and the rest to the second. The
first road gave notice that its rate for transportation of coal from a seaport to the city
would be $1.75, and from the seaport to stations on the second road $1.25, per ton.
*Held,* that the lesser rate did not apply to coal which was ordered to be transported from
the seaport to the city and delivered there at the terminal freight station of the second
road, without being transferred for further transportation or delivery so as to give rise to
successive charges or an apportionment of the gross freight charges between the two
roads.

BILL IN EQUITY filed May 26, 1871, to compel the Norwich
& Worcester Railroad Company, a corporation under the law
of Massachusetts, to transport and deliver coal to the plaintiffs.

The bill alleged that the plaintiffs were coal dealers in Worces-
ter, and the defendants owned a railroad and were common car-
riers between that city and tide water at Norwich in Connecticut ;
that on March 28, 1871, the defendants agreed in writing with
the plaintiffs " that they would receive and carry coal for the
plaintiffs " for one year from April 1, 1871, from tide water to
Worcester, to be delivered by them to the plaintiffs on the line
of said railroad at the rate of $1.75 per ton, and to be delivered
at stations on the line of the Worcester & Nashua Railroad, con-
necting with the defendants' railroad at Worcester, at the rate of
$1.25 per ton for its transportation over the defendants' said road
to Worcester, and also agreed to pay for all switching of the coal
so carried ; " that, relying on this agreement, the plaintiffs en-
tered into many contracts to sell and deliver coal to their custom-
ers, and bought coal in New York and contracted for its trans-
portation to the terminus of the defendants' railroad at tide water
in Norwich, and gave notice thereof to the defendants, and di-
rected them to receive the coal upon its arrival at Norwich, and
deliver it to the plaintiffs at Lincoln Square, a station on the line
of the Worcester & Nashua Railroad ; that a portion of the coal
had arrived at Norwich and been received by the defendants and
carried to Worcester, and was in the possession of the defendants
there ; that another portion of it was in course of transportation

by water from New York to the terminus of the railroad at Norwich; and that the Worcester & Nashua Railroad Company were willing and ready to receive and transport said coal over their railroad to their said station at Lincoln Square; but that the defendants wrongfully pretended that they were not bound to transport said coal over their railroad to stations of the Worcester & Nashua Railroad in Worcester at the rate of $1.25 per ton, and insisted that they were entitled to charge and receive therefor $1.75 per ton; that the plaintiffs had offered and were ready and willing to pay them for such transportation at the lesser rate, and to give them a sufficient bond to pay the difference between that and the higher rate if the construction put upon the contract by them should be determined to be the true one, and had requested them to transport and deliver the coal accordingly, but the defendants had refused to do so; that the defendants refused to deliver the coal which was in their possession at Worcester, and to receive and transport that which was to arrive at Norwich, unless the plaintiffs would first pay them the full rate of $1.75 per ton; that the plaintiffs, by reason of such refusal, would suffer injuries in their business, through inability to fulfil their contracts with their customers, for which they would have no adequate and complete remedy at law; and that of all this the defendants had notice, and by persisting in their said refusal were endeavoring to coerce the plaintiffs to pay said higher rate.

The prayer was, for an injunction on the defendants " to receive and transport said coal from tide water to said Lincoln Square station and there deliver all said coal to the plaintiffs, they hereby offering to pay therefor at the rate of $1.25 per ton and to give such bond as the court may order for the payment of fifty cents additional per ton in case it shall be finally determined that they are bound so to do; " and for general relief.

The bill was afterwards amended by alleging that the Norwich & Worcester Railroad had been leased to the Boston, Hartford & Erie Railroad Company, and that receivers of the property, franchises and effects of said company had been appointed by this court in Suffolk, and were operating the leased railroad under the appointment; and by joining the receivers as defendants.

At a hearing, before *Gray*, J., upon a motion for a preliminary injunction, the following facts appeared:

On March 28, 1871, the defendants, by their superintendent, addressed a letter to the plaintiffs concerning the transportation of coal over the Norwich & Worcester Railroad. The material part thereof was as follows:

" The following will be the rates per gross ton on coal Norwich to Worcester from April 1.

| | | | |
|---|---|---|---:|
| To Worcester | . . . . . . . . . . | | $1.75 |
| " " | for stations on B. & A. R. R. . | . . . | 1.25 |
| " " " " " W. & N. R. R. | . . . . | | 1.25 |
| Except Nashua, Groton Junction, Clinton, Leominster and Fitchburg, which will be | . . . . . . . . | | 1.00 |
| The company will also pay switching." | | | |

The plaintiffs bought 494 tons of coal in New York on March 10, 1871, and 572 tons during April. All this coal was to be shipped in sailing vessels from New York to Norwich, upon their order, and was so shipped, to the care of the defendants, in various quantities, on different schooners, at various times during the month of May, before the filing of this bill; and the plaintiffs directed the defendants " to transport all of it over their railroad from Norwich to Worcester, and to deliver it to the plaintiffs at Lincoln Square, the terminal freight station of the Worcester & Nashua Railroad in Worcester." Out of these 1066 tons of coal the plaintiffs had sold 390 tons to customers in Worcester, and 50 tons to a customer in Fitchburg, and intended to hold the rest for their general trade at their coal yards in Worcester.

It further appeared " that the Norwich & Worcester Railroad connected with the Worcester & Nashua Railroad at the Foster Street station in Worcester; that the defendants' freight depot was located quarter of a mile south of the Foster Street station, and the only freight station and one of the two passenger stations in Worcester of the Worcester & Nashua Railroad were at Lincoln Square, three quarters of a mile north of the Foster Street station; that the plaintiffs owned a coal yard in Worcester, on a branch track of the Worcester & Nashua Railroad leading from their main line at a point between Foster Street station and Lin-

coln Square to the track of the Boston & Albany Railroad, another coal yard on the line of the Boston & Albany Railroad between Foster Street station and Washington Square, and another coal yard on the line of the Norwich & Worcester Railroad, about half a mile south of their said freight station ; and that the Norwich & Worcester Railroad Company had, under their former contracts with the plaintiffs, been accustomed to switch the cars containing the plaintiffs' coal, transported over their railroad, to the plaintiffs' coal yards in Worcester, when to be disposed of there, and to the premises of parties on the line of the defendants' road, to whom the plaintiffs had sold the coal on the cars, without additional charge therefor."

At the time of the filing of this bill, the defendants had received at Norwich 817 of the 1066 tons of coal, and transported it to Worcester ; and it was lying there in their cars on their freight ground. The other 249 tons were on board of two schooners, which had arrived from New York at the defendants' wharves in Norwich ; the defendants had refused to receive it and transport it to Worcester and deliver it to the plaintiffs at Lincoln Square at a less rate than $1.75 per ton, if it was to be used in Worcester ; and the plaintiffs had offered to pay them at the rate of $1.25, and to give them a bond to pay 50 cents more per ton if the court should determine that it was due.

Besides the 1066 tons of coal above referred to, the defendants, during the month of May 1871, before the filing of this bill, received at Norwich three cargoes of coal from New York, belonging to the plaintiffs, and amounting to 679 tons ; transported it to Worcester ; and delivered it to the plaintiffs at Lincoln Square by the plaintiffs' direction. The plaintiffs had offered to pay freight on it at the rate of $1.25 per ton ; and the defendants had declined to receive the payment, and demanded $1.75 per ton. Concerning one of these three cargoes the plaintiffs addressed a letter to the defendants' superintendent on May 1, of which the following is all but the formal part : " We were somewhat surprised to receive a letter from Mr. Parker on Saturday, in which he says that his instructions are to bill cargo coal per schooner Bentley to Worcester, and that Mr. Turner will set it over for us

to where we want it. Now all we wish is that the cargo of coal per schooner Bentley be forwarded to Lincoln Square station, care of the Worcester & Nashua Railroad, at which place we shall receive the coal. Hoping this will be a sufficient explanation, we remain," &c. To this letter the superintendent replied on the same day, acknowledging its receipt and continuing as follows : " In reply I will say that, after we deliver the cargo of the schooner Bentley in Worcester, it can be taken to any place in Worcester, designated by you, which is reached by rail, either by our people if they get permission from the other roads, or by the agents of the Boston & Albany or Worcester & Nashua Roads. This idea of billing to Lincoln Square is simply a subterfuge, which I perfectly understand, and I here amend my letter of March 28 to read ' To Worcester for stations on the Boston & Albany and Worcester & Nashua Roads beyond Worcester.' "

The plaintiffs stated at the hearing, " that they were bound by the terms of the paper of March 28 to pay for the carriage of the coal from the defendants' freight depot in Worcester to the Lincoln Square station of the Worcester & Nashua Railroad." And the judge, by consent of the parties, reserved for the determination of the full court the question " whether the freight upon the coal ordered to be delivered at the Lincoln Square station should be $1.75 per ton or $1.25 per ton."

*T. L. Nelson,* for the plaintiffs.

*F. J. Lippitt,* for the receivers.

WELLS, J. The lower rates for transportation of coal from Norwich to Worcester, " for stations on W. & N. R. R.," were applicable to that which should require to be passed over to the Worcester & Nashua Railroad, for further transportation or delivery, so as to give rise to successive charges, or an apportionment of the gross freight charges between the two carriers. They did not apply to coal delivered by the defendants to the plaintiffs at Worcester ; although, for the purposes of such delivery, the defendants were obliged to use the tracks of the Worcester & Nashua Railroad ; and although such delivery was to be made " at Lincoln Square, the terminal freight station of the Worcester & Nashua Railroad in Worcester."

The tracks between and at the terminal stations of the two roads must necessarily be used by each corporation for the delivery of freight for stations upon the other road ; and might properly be so used, by mutual arrangement or consent, for delivery of freight by either directly to consignees thereof in Worcester. If the defendants were ready to deliver the coal to the plaintiffs at Worcester in this mode, at the place designated by them for receiving it, the defendants had the right to do so, under the scale of rates issued, as " freight to Worcester." There is nothing in the contract, in the nature of the transaction, or in the relations of the corporations to each other, to the public or to these plaintiffs, which entitles them to require the coal to be delivered to the Worcester & Nashua Railroad, and thus secure to themselves the advantage of a concession that was intended only for freight which would be subject to successive charges. The plaintiffs' letter of May 1, insisting that their coal should be forwarded to the care of the Worcester & Nashua Railroad, was an attempt to obtain a reduction of freight charges through a literal construction of the defendants' statement of rates, inconsistent with its manifest scope and purpose.        *Bill dismissed, with costs.*